THE STATE, JOHN S. ROBERTS, PROSECUTOR, v.
WILLIAM SHAFER ET AL.

Submitted December 5, 1898—Decided February 27, 1899.

1. The provision (since repealed) of the fifty-second section of the Ballot
   Reform law of May 28th, 1890 (*Gen. Stat.*, p. 1341, *pl.* 284), for the
   nullifying an election and ordering a new one, by a justice of the
   Supreme Court, was so imperfect and incomplete with respect to the
   power conferred to decide a controversy, as to be wholly ineffective
   and nugatory.

2. The fact that a new election ordered has been held and certified, will
   not bar a *certiorari* to review orders made under said section.

On *certiorari.*

At the charter election held in the city of Camden on
April 13th, 1897, the statement of the result in the Third
ward was that John S. Roberts had received five hundred
and fifty-nine votes, and that William Shafer had received five
hundred and twenty-nine votes for member of the city council,
and the board of canvassers declared Roberts elected.   On
April 29th, 1897, the justice of the Supreme Court holding
the Camden Circuit made separate orders, as to each of the
three voting precincts of the ward, nullifying such election
and directing a new one to be held on May 18th, 1897.   On
May 19th, 1897, he allowed the present writs, removing such
orders to the Supreme Court for review.   The return of the
county clerk includes not only the orders and the proceedings
on which they were based, but also a statement of the board
of canvassers, of the new election, showing twenty-one votes
cast for Roberts and four hundred and eight votes for Shafer,
and a certificate of said justice filed May 19th, 1897, declaring
the result as the election of Shafer.

Before Justices LUDLOW and COLLINS.

For the prosecutor, *Henry M. Snyder, Jr.*

For the defendants, *Edwin G. C. Bleakly.*

The opinion of the court was delivered by

COLLINS, J.  The orders removed rest upon the fifty-second section of the act of May 28th, 1890 (*Gen. Stat., p.* 1341, *pl.* 284), commonly called the Ballot Reform law, which section has been repealed since such orders were made. *Pamph. L.* 1898, *p.* 237.  The defendants dispute our jurisdiction on the allegation that the writs were not allowed until after the justice's certificate was filed.  The statute directs the filing of such a certificate and enacts that it shall, "within constitutional limits, be final and conclusive on all persons and parties."  That provision, of course, would not bar a direct attack by *certiorari* upon the underlying orders; but defendants suggest that the filing creates a *status*, compelling *quo warranto* as the only remedy.  They cite *Campbell* v. *Wainright,* 21 *Vroom* 555, where it was held that after the certificate of the officers of an election, held under the act for the formation of borough governments, has been filed in the county clerk's office, a corporation exists that cannot be defeated by *certiorari,* but may be dissolved only by *quo warranto.*  The cases are not analogous.  The Borough act provides that from the time of filing the certificate the inhabitants of the borough shall be a body corporate in fact and in law.  *Gen. Stat., p.* 180, § 3.  A certificate of election makes no one an *officer.* There must be user of the office before *quo warranto* will lie.  *Haines* v. *Freeholders of Camden,* 18 *Vroom* 454.  That remedy, therefore, was not available to the prosecutor.  The charter of Camden makes the city council sole judge of the election returns and qualifications of its own members.  *Pamph. L.* 1871, *p.* 224, § 26.  Presumably the prosecutor took his seat at the annual organization of the council before the new election.  If so, being in possession of the office, he might perhaps safely have awaited *quo warranto,* by which proceeding alone could the person claiming under the new election disturb him.  *Henry* v. *City Council of Camden,* 13 *Vroom* 335.  But the council might recognize the new certificate—perhaps, if the statute be valid, *must* recognize it; and it seems to me clear that, whether in possession or not, the prosecutor

had a clear right to test in some way the validity of proceedings presumptively destroying his normal *indicia* of title to office. I know of no other way for him to do so than by *certiorari*. By the statute *sub judice* the justice sits as a commissioner and not *in curia*. *In re Margarum*, 26 *Id.* 12. *Certiorari* will lie to review the adjudication of any special statutory tribunal acting in a summary way different from the course of the common law. *State, Elder, pros.,* v. *District Medical Society of Hudson County,* 6 *Id.* 200.

While it is the settled rule in this state that a *certiorari* will not be allowed where the obvious and only purpose of the writ is to try title to office, yet it is equally well settled that collateral questions involving the legality of an election to office may be raised and determined under that writ in testing the validity of laws, resolutions, &c. *Haines* v. *Freeholders of Camden, ubi supra; Fitzgerald* v. *New Brunswick,* 18 *Vroom* 479; *affirmed,* 19 *Id.* 457, 458, 489; *Leeds* v. *Atlantic City,* 23 *Id.* 332, 333; *Loper* v. *Millville,* 24 *Id.* 362; *Markley* v. *Cape May Point,* 26 *Id.* 104.

I proceed, therefore, to the merits of the case. The fundamental question raised by the prosecutor is the efficacy of the statute on which the orders removed by the writs were based. *In re Margarum, ubi supra,* Chief Justice Beasley plainly intimated his own opinion that the entire provision of the fifty-second section was so imperfect and incomplete with respect to the power conferred to decide a controversy as to render the provision itself wholly nugatory. He called attention to the absence of any ability in the office of justice of the Supreme Court that would materially subserve the statutory endowment; for, while by another statute the holder of that office might take voluntary oaths and affidavits, he could not compel the attendance of witnesses or punish the recusancy of witnesses, if they should refuse to be sworn. For a mere recount of votes and new certificate of election no greater authority would be needed. Statutes of that purport exist (*Gen. Stat., p.* 1327, *pl.* 195; *p.* 1367, *pl.* 369) and have been upheld. There the duties to be performed are purely minis-

terial (*Ruh* v. *Frambach*, 18 *Vroom* 85), but in this statute they were judicial. The scope of the inquiry included fraud, bribery and illegal practices and deprivation of the voters of fair opportunity to express their choice at the election, and required a hearing and determination. Mature deliberation has led us to the conclusion that, for the reason suggested, the provision for such an inquiry was wholly ineffective and nugatory. There was not even a requirement of notice of the proceeding to the person whose election should be challenged. Probably jurisdiction, otherwise ample, would be sustained upon actual personal notice, but to bind a citizen by a proceeding involving the taking of evidence and afford him no means of securing it, was an anomaly in jurisprudence.

It is suggested that the prosecutor cannot now complain, because he voluntarily appeared and submitted to the jurisdiction of the justice, and there was no recusancy of witnesses. If this were so it would not affect the case, for the defect is radical and avoids the statute. I do not, however, in the proceedings before us find any evidence to support the assertion. Each order simply recites that, having directed six days' notice to be given to all the candidates for the office in controversy, and it appearing that such notice had been given, the justice, at the time and place appointed, *in the presence of* counsel for certain named candidates, including the prosecutor, proceeded in a summary manner to hear and determine the matter, and then, for a reason stated, necessarily involving an inquiry into extrinsic facts, sets aside and nullifies the election.

Having reached this conclusion, it is unnecessary, although challenged, to consider the constitutionality of an enactment now extinct, or to discuss the questions raised in the case, on the possibility of the statute being upheld.

The orders under review will be set aside, with costs.