LEIMPETER'S DISPOSAL SERVICE, INC., A NEW JERSEY CORPORATION; AND JOHN F. LEIMPETER, INDIVIDUALLY, PLAINTIFFS, v. MAYOR & COUNCIL OF THE BOROUGH OF CARTERET AND THE BOROUGH OF CARTERET, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided September 26, 1972.

*Mr. Peter J. Selesky* for plaintiffs (*Messrs. Selesky, Kolsky, & Epstein,* attorneys).

*Mr. Edward J. Dolan* for defendants.

OSBORNE, J. S. C. This is an action in lieu of prerogative writs challenging the validity of an ordinance amendment limiting use of the Borough of Carteret municipal disposal area.

Plaintiffs John Leimpeter and Leimpeter's Disposal Service, Inc. (hereinafter referred to collectively as "Leimpeter") are, respectively, the principal stockholder and operator of a solid waste collection business located in Carteret. Leimpeter holds an environmental protection number issued by the Bureau of Solid Waste Management, *N. J. S. A.* 13:1E-4, and is licensed by the Public Utilities Commission.

The amendment under consideration, ordinance 71-14, was adopted by the defendant borough council on September 21, 1971, effective October 4, 1971. It reads in pertinent part:

19-10 (b). No person or party engaged in the act, business or practice of a private scavenger, or transporter and disposer of garbage, refuse, trash or wastes, of any nature whatsoever having its origin in any commercial, mercantile, business or industrial operation or establishment situated in the Borough of Carteret shall dump or dispose of same in any Borough of Carteret owned or operated municipal ground or refuse disposal area or landfill site.

Prior to the adoption of this amendment Leimpeter, as well as other solid waste collectors, had utilized the Carteret disposal site on a fee basis. Carteret had created a municipal disposal area in 1969 by ordinance 69-09, effective July 23, 1969.

It is clear from a reading of the amendment that proprietary waste collectors are no longer permitted to dispose of nonresidential waste originating in Carteret in the municipal area. However, the amendment does allow owners of such property to deposit their own refuse in the municipal facility. In effect, a Carteret mercantile, business or commercial establishment might purchase or lease a vehicle to transport its waste to the local site, but under the amendment it cannot engage an independent contractor such as plaintiffs to perform the same service. Leimpeter alleges

this distinction makes the amendment unreasonable, arbitrary and capricious, thereby denying plaintiffs the equal protection of the laws. Leimpeter also seeks damages to the extent of its added business expenses in transporting Carteret originated waste to a commercial disposal area outside the borough. Defendants contend that the amendment is a reasonable exercise of municipal police power. The borough counterclaims for fees allegedly owed it by Leimpeter under the prior 1969 ordinance.

At the hearing of this matter defendants moved to dismiss plaintiffs' complaint on the ground that the action was not timely under *R.* 4:69–6(a), which reads as follows:

General Limitation. No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed, except as provided by paragraph (b) of this rule.

Paragraph (b) lists a number of special time limitations inapplicable here.

The amendment in question took effect October 4, 1971, whereas plaintiffs' complaint was not filed until March 23, 1972. Leimpeter was aware of the amendment soon after its adoption, for he filed a petition with the Public Utilities Commission on October 13, 1971 seeking to compel defendants to open the Carteret site to him. This petition was denied, the Commission apparently lacking jurisdiction of the matter since the Carteret area no longer imposed a fee, thus disqualifying it as a "public utility." See *N. J. S. A.* 48:2–13; *In re Borough of Glen Rock,* 25 *N. J.* 241 (1957); *Petition of South Lakewood Water Co.,* 115 *N. J. Super.* 352 (App. Div. 1971).

This action clearly was not brought within the general time limitation of *R.* 4:69–6. However, subsection (c) of this rule provides:

Enlargement. The court may enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires.

The stringent time requirement for commencement of actions in lieu of prerogative writs has traditionally been relaxed when a constitutional question is raised. *Schack v. Trimble*, 28 *N. J.* 40 (1958); *Oldfield v. Stoeco Homes, Inc.*, 26 *N. J.* 246 (1958); *McKenna v. N. J. Highway Authority*, 19 *N. J.* 270 (1955); *Holloway v. Pennsauken Tp.*, 12 *N. J.* 371 (1953); *Nelson v. South Brunswick Planning Bd.*, 84 *N. J. Super.* 265 (App. Div. 1964); *Catalano v. Pemberton Tp. Bd. of Adjustment*, 60 *N. J. Super.* 82 (App. Div. 1960).

Though the comment to subsection (c) speaks of a "substantial or novel" constitutional question, more recent cases construing the exception have permitted relaxation whenever a credible constitutional argument is advanced. See, *e. g., Nelson v. South Brunswick Planning Bd., supra*, 84 *N. J. Super.* at 275-276.

Plaintiffs' allegations raise a valid equal protection question deserving discussion on its merits.

Defendants' motion to dismiss is denied.

Carteret municipal officials testified that the amendment was adopted to protect the public health by preventing waste of non-Carteret origin from being deposited in the municipal disposal area. Under the 1969 ordinance the borough had found it impossible to detect the origin of solid waste, especially that collected by private scavengers such as Leimpeter who have customers in various municipalities. The State Department of Environmental Protection had often cited the borough for violations of the State Sanitary Code, culminating in May 1971 with the closing of the disposal area until it conformed with Code regulations.

As a result, the borough took remedial steps. It ceased operating the disposal facility as a proprietary enterprise in order to remove it from the jurisdiction of the Public Utilities Commission. *N. J. S. A.* 48:2-13, 48:13A-1 *et seq.* See *Bergen County v. Department of Public Utilities*, 117 *N. J. Super.* 304 (App. Div. 1971). (A nonproprietary municipal facility intended solely for local use, though not

a "public utility" for P. U. C. jurisdictional purposes, is still subject to the provisions of *N. J. S. A.* 13:1E–1 *et seq.,* the Solid Waste Management Act. This act vests the State Department of Environmental Protection with broad regulatory powers over solid waste management.) In this manner Carteret officials could limit access to the disposal site.

Secondly, the borough adopted the aforequoted amendment prohibiting use of the municipal facility by private solid waste collectors. This measure significantly diminished the quantity of waste entering the disposal area, thereby making it less burdensome to maintain the site in a sanitary fashion.

Testimony also revealed that Carteret spent approximately $90,000 to improve and upgrade the disposal facility. As a · result of this expenditure and the adoption of the amendment in issue the borough has not been cited for Sanitary Code violations since October 4, 1971.

The safeguarding of public health is an essential governmental function within the police power of the State. *West Caldwell v. Caldwell,* 26 *N. J.* 9 (1958). As a result, municipalities have long been given the power to adopt legislation over the removal and disposal of waste in order to promote the public health, comfort and safety. *Dover Tp. v. Witt,* 7 *N. J. Super.* 259 (App. Div. 1950). Such regulation is presumed valid, *N. J. Const.* (1947), Art. IV, § VII, par. 11, and will be upset only when "palpably unreasonable." *Id.* at 262. As to the wide latitude afforded municipalities in controlling waste disposal, see *N. J. S. A.* 40:66–1 *et seq.*

A municipal regulatory ordinance will be sustained whenever it bears a reasonable relation to the safeguarding of public health. *Gilman v. Newark,* 73 *N. J. Super.* 562 (Law Div. 1962); *Marangi Bros. v. Bd. of Com'rs, Ridgewood,* 33 *N. J. Super.* 294 (App. Div. 1955). Carteret has a valid interest in promoting good health by excluding non-Carteret waste from its disposal area, a limitation clearly within the municipal police power. *Public Health Council v. Franklin Tp. Bd. of Health,* 108 *N. J. Super.* 239 (App. Div. 1970).

Because of the prior difficulties encountered by Carteret in effecting this legitimate end, it cannot be said that the means chosen was unreasonable.

▉ Leimpeter's contention that a private waste collector should be treated alike with a property owner is without merit. Different considerations govern municipal treatment of these distinct classes. A municipality may not favor individual residences over multi-family dwellings in providing garbage collection service. *Teagen Co. v. Bergenfield,* 119 *N. J. Super.* 212 (Law Div. 1972); *Boulevard Apartments, Inc. v. Mayor, etc. of Lodi,* 110 *N. J. Super.* 406 (App. Div. 1970). Yet, a municipality may determine the *method* of waste collection and disposal by contracting with one solid waste collector to the exclusion of all others. *Marangi Bros. v. Bd. of Com'rs, Ridgewood, supra.*

▉▉ To a large extent, then, whether a waste disposal regulation unlawfully discriminates depends upon the class with which it deals. A municipality must treat its residents alike with respect to municipal waste collection, but it is nonetheless free to prohibit a given means of disposal to further the public health. If the Carteret amendment discriminates unfairly, it does so with respect to its own nonresidential establishments, which are now deprived of having plaintiffs collect their waste for disposal in the Carteret facility. But this question is not before the court, and cannot, of course, be raised by these plaintiffs. *Nelson v. South Brunswick Planning Bd., supra,* 84 *N. J. Super.* at 276.

▉ Perhaps Carteret has not chosen the most judicious means of protecting the public health. However, considering the expansive police powers afforded municipalities in waste regulation, the amendment as adopted is valid as not palpably unreasonable.

It should also be observed that the amendment affects all private solid waste collectors, and not Leimpeter specifically. Persons situated alike shall be treated alike. *Boulevard Apartments, Inc. v. Mayor, etc., of Lodi, supra,* 110 *N. J. Super.* at 410-411.

Because the amendment's validity is upheld, it is unnecessary to consider Leimpeter's claim for damages. It might be noted, however, that no cause of action against a municipality can be grounded on the alleged invalidity of an official legislative determination, even if such legislation is subsequently declared invalid. *Visidor Corp. v. Borough of Cliffside Park*, 48 *N. J.* 214 (1966); *Veling v. Borough of Ramsey*, 94 *N. J. Super.* 459 (App. Div. 1967).

Defendant Borough of Carteret has counterclaimed for $6,340 allegedly owed it by Leimpeter for use of the disposal area between September 1, 1970 and July 1971. At that time the borough imposed a fee of five dollars for disposing of a small load of waste (up to five tons) at the site, and ten dollars for a large load (over five tons). The amount claimed was compiled from records kept in the regular course of Carteret municipal business. Leimpeter did not dispute the sum, but merely stated that the amount was not owed. No proof was offered as to this contention, and the borough is therefore entitled to recover $6,340 from plaintiffs.