68 N.J. 576 (1975)
350 A.2d 19
JOHN J. BRUNETTI, t/a BROOKCHESTER SECTIONS V, VII, VIII AND IX, AND JOANN TOSI, t/a BROOKCHESTER SECTIONS III, VI AND X, PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF NEW MILFORD, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued May 27, 1975.
Decided December 11, 1975.
*582 Mr. Herbert R. Ezor argued the cause for appellants (Mr. Murray A. Laiks of counsel; Mr. Ezor on the brief; Messrs. Heller & Laiks, attorneys).
Mr. Mario R. La Barbera argued the cause for respondent.
The opinion of the Court was delivered by PASHMAN, J.
Like the companion cases of Hutton Park Gardens v. West Orange Town Council, 68 N.J. 543 (1975) (Hutton Park) and Troy Hills Village v. Parsippany-Troy Hills Tp. Council, 68 N.J. 604 (1975) (Troy Hills Village), also decided today, this appeal involves constitutional challenges to a municipal rent leveling ordinance. Because this case presents several issues not raised in the companion cases, we have chosen to deal with it in a separate opinion.
New Milford enacted a revised rent control ordinance on November 26, 1973[1] which establishes base rents as those in *583 effect on January 11, 1973 (the date federal controls were lifted) and limits rent increases to the percentage increase in the CPI[2] during the period from 90 days prior to commencement of the previous tenancy to 90 days prior to its expiration. No restrictions are placed on initial rents for newly constructed dwellings. Under the ordinance landlords are required to notify the Borough Rent Leveling Board of any proposed rent increase 45 days in advance of its imposition. In addition, the ordinance limits rent increases to one per year. Landlords may seek permission from the Rent Leveling Board to pass on to the tenant property tax increases but these tax surcharges are limited to a percentage of the tax increase equal to the percentage of total rooms in the building occupied by the tenant.[3] Tenants may pay tax surcharges in 12 monthly installments. If the landlord wins a tax appeal, he must disburse 50% of the reduction, minus costs of the appeal, among his tenants in proportion to the amounts for which they are responsible under the tax surcharge formula. The ordinance further provides that a landlord may appeal to the Rent Leveling Board (composed of two landlord representatives, two tenants and one resident homeowner) for an additional rent increase "in the event [he] cannot meet his mortgage payments and maintenance [costs]" or cannot realize "a reasonable profit from his investment in his property."[4] The ordinance also limits the grounds for eviction. *584 This ordinance was challenged and upheld in the Superior Court in Bergen County on July 23, 1974 in Costa v. Borough of New Milford, L-13458-73 (Law Div. 1974) by the same trial judge who heard the instant matter below.
The ordinance was subsequently amended on September 9, 1974 by Ordinance No. 74:12, which further limits allowable rent increases to 50% of the percentage increase in the CPI during the period from 90 days before commencement of the previous term to 90 days before its termination.[5]
On September 9, 1974 plaintiffs brought this action in lieu of prerogative writ in the Superior Court in Bergen County, challenging the constitutionality of the original ordinance and as amended. Specifically, plaintiffs alleged that the ordinance was confiscatory, constituted an impairment of the obligations of contract, was violative of substantive due process in that it failed to permit rents to rise as rapidly as costs, was arbitrary, vague, unreasonable and unworkable and was ultra vires the police power since the municipality had made no determination of the existence of a housing emergency.
Plaintiffs' complaint sought immediate injunctive and declaratory relief. On October 8, 1974 the trial judge enjoined enforcement of the ordinance as amended permitting landlords to collect rent pursuant to the 1973 ordinance but requiring them to place the excess in escrow.
After hearing arguments on cross-motions for summary judgment, the trial judge rendered an oral opinion holding that all challenges to the original ordinance were barred by R. 4:69-6(a), which requires actions in lieu of prerogative *585 writs to be commenced no later than 45 days after the accrual of the right to the review or relief claimed. As a result, no evidence was submitted with respect to these issues. Addressing only the 1974 amendments, the trial court first upheld the facial constitutionality of the provisions reducing the ceiling of allowable rent increases from 100% to 50% of the CPI, but then barred plaintiffs from attempting to prove that the ordinance was unconstitutional as applied on the grounds that they must first exhaust administrative remedies by applying for a hardship increase. On November 18, 1974 a final order was signed dismissing plaintiffs' complaint. Restraints were continued pending appeal.
This Court granted certification on its own motion pursuant to R. 2:12-2. 68 N.J. 174 (1975).

I

Applicability of Rule 4:69-6
As noted above, the trial court rejected plaintiffs' challenges to the original ordinance as untimely filed under R. 4:69-6.[6] In so holding, the court refused to extend the time limit "in the interest of justice" as permitted by paragraph (c) of the rule because the original ordinance had been upheld previously in Costa v. Borough of New Milford, plaintiffs had known about this prior action and could have intervened therein and, consequently, plaintiffs should not be allowed to relitigate the constitutionality of this ordinance at the taxpayers' expense. We disagree.
In Ward v. Keenan, 3 N.J. 298 (1949), this Court recognized that the creation of the in lieu proceeding by the *586 Constitution of 1947 was not intended to discard "the substantive law of the former prerogative writs as a means of safeguarding individual rights against public officials and governmental bodies," but was meant to avoid the "defects of procedure that led to criticism." Id. at 308. As a result, exceptions based on prior decisional law were soon engrafted upon the rules governing in lieu proceedings. Schack v. Trimble, 28 N.J. 40, 47-48 (1958). In particular, the courts held that certain cases were excepted from the rule governing limitation of actions. See Pressler, Current New Jersey Court Rules, Comment R. 4:69-6 at 750 (1975). These exceptions included cases involving (1) important and novel constitutional questions;[7] (2) informal or ex parte determinations of legal questions by administrative officials;[8] and (3) important public rather than private interests which require adjudication or clarification.[9] Paragraph *587 (c) of the Rule which provides for enlargement of the limitations period, was added by amendment in 1957[10] and was intended to codify thees decisional exceptions "in the form of a generalized standard." Schack v. Trimble, supra, 28 N.J. at 48. Consequently, in determining whether "the interest of justice" requires an enlargement of time under paragraph (c), courts should look to these decisions for guidance. Suffice it to say that the constitutional claims raised by plaintiffs in the instant case are at least as fundamental and important as those raised by appellants in the cases cited above at footnote 7. Cases decided subsequent to the adoption of paragraph (c) confirm that consideration of substantial constitutional questions warrants relaxation of the time limits of R. 4:69-6 "in the interest of justice."[11]
Some further observations are proper to fully support our rationale. The argument that plaintiffs should be precluded from challenging the original ordinance because they could have joined in the earlier suit is unsound. Res judicata does not bar strangers to a prior action from filing an action of their own, precisely because every plaintiff is entitled to his day in court. Bd. of Directors of Ajax Electrothermic Corp. v. First Nat'l Bank of Princeton, 33 N.J. 456, 463 (1960); Miraglia v. Miraglia, 106 N.J. Super. 266 (App. Div. 1969); In re Estate of Alexandravicus, 83 N.J. Super. 303, 307-308 (App. Div. 1964), certif. den. 43 N.J. 128 (1964). The danger of multiple suits by landlords is not particularly *588 great because collateral estoppel prevents relitigation of any issue actually determined in the original suit. In the instant case, the trial judge conceded that at least some of the issues raised by plaintiffs were not tried in the earlier suit. Therefore, plaintiffs were entitled to submit their proofs.
Thus, subject to the limitation discussed in Part II of this opinion, the trial court should have admitted proofs and rendered a judgment with regard to plaintiffs' challenges to the constitutional validity of the Borough ordinance both as originally enacted and as amended.

II

Exhaustion of administrative remedies
We next hold that the trial judge was correct in ruling on the facial constitutionality of the amended ordinance and in requiring plaintiffs to exhaust their administrative remedies with respect to their other challenges.
R. 4:69-5 provides that:
Except where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.
This Court has recognized that the exhaustion of remedies requirement is a rule of practice designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts. Ward v. Keenan, supra, 3 N.J. at 302. Therefore, while it is neither a jurisdictional nor an absolute requirement, there is nonetheless a strong presumption favoring the requirement of exhaustion of remedies. Roadway Express, Inc. v. Kingsley, 37 N.J. 136, 139 (1962); East Brunswick Tp. Bd. of Education v. East Brunswick Tp. Coun., 48 N.J. 94, 102 (1966); Pleasantville Taypayers v. City of Pleasantville, 115 N.J. Super. 85, 88 (App. Div. 1971), certif. den. 59 N.J. 268 (1971); Patrolman's Benev. Assoc. v. Montclair, 128 N.J. *589 Super. 59, 64 (Ch. Div. 1974) aff'd 131 N.J. Super. 505 (App. Div. 1974); for a general review of authorities see Central R. Co. v. Neeld, 26 N.J. 172, 178-81 (1958), cert. den. 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958).
Admittedly, the exhaustion requirement will be waived where "the interest of justice so requires." Ward v. Keenan, supra, 3 N.J. at 308; Waldor v. Untermann, 10 N.J. Super. 188 (App. Div. 1950). This has been held to mean that exhaustion of remedies will not be required where administrative review will be futile,[12] where there is a need for prompt decision in the public interest,[13] where the issues do not involve administrative expertise or discretion and only a question of law is involved[14] and where irreparable harm will otherwise result from denial of immediate judicial relief.[15]See generally, Pressler, Current New Jersey Court Rules, Comment R. 4:69-5, at 748-49 (1975). None of the above enumerated exceptions applies to the instant matter. New Milford's Rent Leveling Board is explicitly designed to reflect all points of view, to exercise continuing supervision over the operation of the rent control ordinance and to provide *590 relief for landlords who are unable to meet their expenses or recover a reasonable profit. The board possesses both the responsibility to develop expertise on problems relating to rent control and the power to afford landlords the same relief which could be afforded by a court.[16] Moreover, no showing of irreparable harm has been made.
The mere allegation that a constitutional issue is involved does not relieve plaintiffs of the exhaustion requirement. To avoid this requirement, plaintiffs must demonstrate not only that the constitutional question is colorable, but that the matter contains no factual questions which require administrative determination. Mut. Home Dealers Corp. v. Comm. of Bank and Ins., 104 N.J. Super. 25, 31 (Ch. Div. 1968), aff'd o.b. 55 N.J. 82 (1969) See Roadway Express, Inc. v. Kingsley, supra, 37 N.J. at 140, where this Court held that plaintiff's allegation that the *591 corporate franchise tax statute was unconstitutional as applied required detailed findings of fact and that therefore plaintiff had to exhaust its administrative remedies.
Because the question of the ordinance's facial constitutionality involves no real issues of fact (see Hutton Park,), the trial judge correctly rendered a judgment on that question. Schwartz v. Essex Co. Bd. of Taxation, 129 N.J.L. 129, 132 (Sup. Ct. 1942), aff'd 130 N.J.L. 177 (E. & A. 1943). Moreover, since the remaining issues raised by plaintiffs do require factual findings, the trial judge was also correct in ordering plaintiffs to exhaust their administrative remedies.
An identical result was reached in Marshal House Co. v. Brookline Rent Control Bd., 358 Mass. 686, 266 N.E.2d 876, 889 (Sup. Jud. Ct. 1971).

III

Facial Constitutionality
With respect to the facial constitutionality of New Milford's rent control ordinance as amended, we hold for the municipality for the reasons set forth in our opinions in Hutton Park and Troy Hills Village.

A. Substantive Due Process

In those opinions, we examined both the scope of judicial review in addressing constitutional challenges based upon substantive due process and the constitutional permissibility of rent control regulation under those standards. We also explained how the "percentage increase of CPI" rent increase formula, utilized by New Milford, and the "fixed percentage" rent increase formula, used by other communities, both bear a rational relation to the legitimate municipal purpose of stabilizing rental levels. Hutton Park, supra, 68 N.J. at 574. We need not repeat those discussions. Suffice it to say that the New Milford CPI formula does not differ in any respect from the rent increase formulae *592 adopted by West Orange, Wayne and Parsippany-Troy Hills[17] which would warrant a different result here.

B. Confiscation

In Hutton Park we also set forth the standard for determining whether a rent leveling ordinance is confiscatory per se. As was pointed out in Hutton Park an ordinance can be written which is "so restrictive as to facially preclude any possibility of a just and reasonable return." Hutton Park, supra, 68 N.J. at 571.
New Milford's ordinance is not such a regulation. It fixes 1973 rents at a given base level, but permits annual increases in rental charges. Although these increases are not unlimited, we cannot say a priori that the ordinance precludes recovery of just and reasonable returns. Moreover, New Milford's ordinance is even less facially restrictive than the rent control schemes upheld in Hutton Park and Troy Hills Village in that it permits a landlord to apply for an unlimited rental increase in the event that he "cannot realize a reasonable profit from his investment."[18] Therefore, we conclude that this ordinance is not confiscatory on its face.

IV

Housing "emergency" not requisite for enactment of rent control
Plaintiffs contend that the rent leveling ordinance, as originally enacted in 1973 and as amended in 1974, was ultra vires the police power and invalid on its face because of the borough's failure to declare the existence of a "housing *593 emergency."[19] Moreover, they contend that because the borough made no specific averments with respect to either the reasonableness of rental charges or the existence of a housing shortage, the township failed to present any factual justification for imposing controls.
As we discussed at length in Hutton Park, it is well settled that governmental price regulation violates neither state nor federal principles of substantive due process merely because such legislation is not supported by a special showing that an "emergency" exists or that the industry to be regulated is "affected with a public interest." Hutton Park, supra, 68 N.J. at 559, 561-562; Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Olsen v. Nebraska ex rel. Western Reference & Bond Ass'n, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1941); State Bd. of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 516-19 (E. & A. 1935). Consequently, absent specific statutory or constitutional provisions to the contrary, municipalities are under no obligation to hold special public hearings, undertake special studies of the local rental housing market or make specific averments of a housing emergency prior to *594 adopting rent control ordinances.[20]Troy Hills Village, supra, 68 N.J. at 616. Therefore, plaintiffs' allegation that New Milford failed to undertake these activities will not sustain a constitutional attack on the ordinance in question.
In our opinion in Hutton Park, we further observed that proof of "special circumstances" or "emergent conditions" was long ago rejected as an absolute prerequisite for determining whether legislative enactments violate substantive due process. Hutton Park, supra, 68 N.J. at 559-562, 561 n. 8. Instead, the correct test to be applied is whether "the laws passed ... have a reasonable relation to a proper legislative purpose." Nebbia v. New York, supra, 291 U.S. at 537, 54 S.Ct. at 516, 78 L.Ed. at 957. More particularly, in the context of rent regulation "the question is whether the legislative body could rationally have concluded that the unrestrained operation of the competitive market was not in the public interest." Hutton Park, supra, 68 N.J. at 564.
Plaintiffs are certainly free to show that New Milford's ordinance violates principles of due process. However, absence of a severe housing shortage alone will not render the rent leveling ordinance unconstitutional where alternative rationales for the ordinance exist. To sustain their burden of proof, plaintiffs must establish by competent proofs or by matters of which the tribunal can take judicial notice that there are no facts which will support any of the possible rationales for adopting the ordinance. In the context of rent control, these rationales include but are not limited to proof of a housing shortage, widespread imposition of exorbitant rents, monopoly control of the rental housing market or prevalence of substandard housing. Hutton Park, supra, 68 N.J. at 564.

*595 V

Constitutionality as applied
Plaintiffs allege that certain provisions of the New Milford ordinance are arbitrary, unreasonable and confiscatory as applied. As noted above, Point II supra, plaintiffs must exhaust their administrative remedies with respect to these issues. While our disposition of this appeal does not require examination of these contentions we deem it appropriate to comment briefly on them in order to provide guidance for subsequent determination of these issues.

A. Rent increase formula

Plaintiffs contend that the ordinance's rent increase formula, both as originally enacted and as recently amended, is unconstitutional because it does not permit landlords to obtain a just and reasonable return on their investments.
To withstand a constitutional challenge, not only must a rent control ordinance be facially nonconfiscatory, Point III supra, but it must also be nonconfiscatory as applied. Hutton Park, supra, 68 N.J. at 565. The question whether a given ordinance fails to permit a just and reasonable return is both a factual and legal question. Hutton Park, supra, 68 N.J. at 570. In the companion case of Troy Hills Village, supra, we set forth guidelines for determining whether a given rent regulation complies with the constitutional requirement. In the case at bar, plaintiffs were precluded from offering proofs with respect to this issue. Consequently, on appeal we leave this contention unanswered. We do hold that if plaintiffs should again seek judicial relief, after exhausting their administrative remedies, the ensuing adjudication is to be governed generally by the guidelines set forth in Troy Hills Village, supra, 68 N.J. at 620-630.

B. Capital improvement costs
Plaintiffs next challenge the ordinance on the grounds that it obliges a landlord to maintain minimum standards without allowing him to pass on to his tenants the cost of capital improvements. We agree that unless landlords receive *596 adequate compensation they may be forced to forego necessary repairs and improvements to their property. Apparently cognizant of this danger, New Milford imposes penalties on any landlord who fails to maintain current standards of service and maintenance.[21] As a result, plaintiffs argue that the landlord faces legal sanctions imposed by the ordinance if he does not make capital improvements and financial distress if he does. What plaintiffs are in fact contending is that by failing to provide for a capital improvement surcharge, the Borough's ordinance trangresses constitutional guarantees of due process and prohibitions against confiscation.
Constitutional principles do not require that rent control regulations take any one particular form. Hutton Park, supra, 68 N.J. at 569. We cannot say a priori that New Milford's ordinance will necessarily leave a landlord with inadequate revenue for normal maintenance or for necessary capital improvements to maintain the building. He may well be able to recoup the necessary funds from gross rental income or from additional rent increases obtained pursuant to the ordinance's hardship provision. Moreover, we cannot say that the failure to provide additional surcharges for capital expenditures vitiates the reasonableness of the relationship between the regulations and the Borough's goal of stabilizing *597 rental levels. Therefore, we do not find the ordinance to be confiscatory per se or facially violative of due process.
As noted above, it is still open to plaintiffs to allege and prove that due to the Borough's failure to provide for a capital improvement surcharge, its ordinance is confiscatory as applied. If plaintiffs attempt to do so, their contentions with respect to capital improvements should be subsumed under the more generalized allegation that the ordinance is confiscatory; they are not to be deemed distinct contentions. As we said in Troy Hills Village, reasonable improvement costs are one factor in the overall calculus for determining whether a landlord is realizing a "just and reasonable" return. Troy Hills Village, supra, 68 N.J. at 628. If capital improvements increase the investment, net income thereon is still required to provide a just and reasonable return. There is no separate constitutional requirement that the landlord realize increased income separately allocable to such capital improvement. Hutton Park, supra, 68 N.J. at 569.

C. Tax surcharge provisions of ordinance

Plaintiffs also charge that those provisions of the New Milford ordinance which provide for a tax surcharge to cover increases in municipal property taxes are, in several respects, unfair. Unfairness, however, is not a concept of constitutional dimension. Again, what plaintiffs are arguing is that these provisions render the ordinance violative of the constitutional guarantees of due process and nonconfiscation. Among other complaints, plaintiffs argue that by requiring landlords to apportion tax increases equally among rooms in a dwelling, the ordinance compels them to absorb the cost of tax increases attributable to vacant units. It cannot be said that these provisions bear no rational relation to the purposes of the ordinance. Nor can it be said a priori that these provisions deprive landlords of a just and reasonable return on their investments. Constitutional provisions do not require that rent control ordinances allow landlords *598 to recover all increases in their operating expenses; they require only that the landlord be permitted to obtain a just and reasonable return. Hutton Park, supra, 68 N.J. at 574. Any increase in municipal property taxes which a landlord must bear will be properly and fully accounted for in the calculus for determining what is a fair and reasonable return. Troy Hills Village, supra, 68 N.J. at 626-627.

VI

Ordinance is unworkable
Plaintiffs contend that chapter 69-5 of the New Milford ordinance is unworkable and hence invalid.[22] They explain that in order to obtain a rent increase, a landlord must, within 45 days prior to the effective date of a proposed increase, deliver to the Rent Leveling Board the mathematics involved in computing the increase. These figures include the CPI for the date 90 days prior to the commencement of the current lease, the CPI for the date 90 days prior to the effective date of the proposed increase, the allowable percentage increase and the allowable rent increase. Plaintiffs claim that because the CPI for the date 90 days prior to the proposed increase is not compiled and published for at least 45 to 50 days after that date, this information is unavailable to the landlord on the date on which he must submit *599 his calculations to the Rent Leveling Board, i.e., 45 days prior to imposition of the new rent. Plaintiffs also complain that even if they were able to submit these figures within the time allotted, insufficient time remains in which to undertake and complete eviction proceedings against tenants who refuse to accept the proffered lease.
Statutory provisions which are unworkable and impossible to comply with may be invalidated on the ground that they constitute a denial of substantive due process. Sayre & Fisher Brick Co. v. Dearden, 23 N.J. Super. 453, 460-61 (Law Div. 1952). See also Roberts v. Shafer, 63 N.J.L. 182 (Sup. Ct. 1899); Commercial Credit Corp. v. Congleton, 21 N.J. Super. 88 (Cty. Ct. 1952). Unworkable municipal ordinances may also be invalidated on the grounds that they are arbitrary and unreasonable. Kirsch Holding Co. v. Borough of Manasquan, 59 N.J. 241, 251-252 (1971). Larson v. Mayor & Council of Spring Lake Heights, 99 N.J. Super. 365, 372 (Law Div. 1968); Kozesnik v. Montgomery Twp., 24 N.J. 154 (1957); Schmidt v. Bd. of Adjustment, Newark, 9 N.J. 405 (1952). Of course, a legislative enactment will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt. National City Bank of New York v. Del Sordo, 16 N.J. 530, 542 (1954); Behnke v. New Jersey Highway Authority, 13 N.J. 14, 25 (1953); Reingold v. Harper, 6 N.J. 182, 194 (1951); Inganamort v. Fort Lee, 120 N.J. Super. 286, 301 (Law Div. 1972), aff'd 62 N.J. 521 (1973). Therefore, if plaintiffs' assertions are clearly proven to be correct, then the provisions requiring landlords to file their applications for rent increases within a certain time period must be stricken.
In the case at bar, the trial court made no findings of fact with respect to this issue and the record contains contradictory allegations. While plaintiffs claim that they are unable to obtain the necessary information within the prescribed time period, defendant refutes their contention. In addition, defendant asserts that, in fact, landlords have been *600 filing their requests for rent increases in a timely manner. In any event, defendant states that if these provisions are proven to be unworkable, the Borough would willingly make the necessary adjustments in the ordinance.
Of course, if plaintiffs find that they are able to comply with the ordinance as written, they need not press this issue further. However, if they do decide to pursue it, we remand the matter to the trial court for a determination whether this provision of the ordinance is unworkable and invalid. If invalid, it is to be severed from the remainder of the ordinance[23] and the court should construe said ordinance in such a manner as to allow landlords a reasonable period of time prior to the effective date of a proposed increase in which to submit their computations to the Rent Leveling Board. This may be accomplished by shortening the time in which calculations must be filed to less than 45 days prior to imposition of proposed increases or by changing the date on which the CPI is to be calculated to a date greater than 90 days before the end of the current lease.[24]See Collingswood v. Ringgold, 66 N.J. 350, 357 (1975); State v. DeSantis, 65 N.J. 462, 472-73 (1974); State v. Profaci, 56 N.J. 346, 349-50 (1971); State v. Zito, 54 N.J. 206, 218 (1969) for cases where this Court performed "judicial *601 surgery" in order to preserve the constitutional integrity of a statute or ordinance.

VII

State preemption of eviction provisions in the ordinance
Plaintiffs allege that the provisions of the New Milford ordinance which limit the grounds for eviction are invalid because the State has preempted the municipality's power to act in this area. Plaintiffs further contend that these provisions transgress constitutional proscriptions because they fail to provide a landlord the opportunity to withdraw a rental unit from the rental housing market and convert it into a cooperative or condominium.
It is well established that when a state statute has preempted a field by supplying a complete system of law on a subject, an ordinance dealing with the same subject is void. Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348 (1971) (State regulation of solid waste disposal); Summer v. Teaneck, 53 N.J. 548 (1969) (ordinance designed to prevent blockbusting); Mogolefsky v. Schoem, 50 N.J. 588 (1967) (licensing of real estate brokers); Sutherland, Statutory Construction (4 ed. 1973), § 30.05 at 349. In Summer v. Teaneck, supra, Chief Justice Weintraub outlined the contours of the doctrine of preemption:[25]
A municipality may not contradict a policy the Legislature establishes. Auto-Rite Supply Co. v. Mayor and Township Committeemen of Woodbridge, 25 N.J. 188 (1957). Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field. This follows from *602 the basic principle that local government may not act contrary to State law. But an intent to occupy the field must appear clearly. Kennedy v. City of Newark, 29 N.J. 178, 187 (1959). It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power. Masters-Jersey, Inc. v. Mayor and General Council of Borough of Paramus, 32 N.J. 296 (1960). Hence the fact that the State has licensed a calling may not be enough to bar local licensure to protect an additional value of local concern. Belleville Chamber of Commerce v. Town of Belleville, 51 N.J. 153, 157 (1968). The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act. [53 N.J. at 554-55]
In the case at bar, defendant argues that the provision relating to grounds for eviction does not contradict or undermine State policy but rather, essentially duplicates the State statute on the subject. As noted above, however, courts may still find that there has been preemption by the state even where there is no apparent conflict between state and local enactments. Summer v. Teaneck, supra, 53 N.J. at 554. State v. Ulesky, 54 N.J. 26 (1969) (municipal registration of criminals); Chester Tp. v. Panicucci, 116 N.J. Super. 229, 234-35 (App. Div. 1971), aff'd 62 N.J. 94 (1973) (municipal regulation of firearms); Coast Cigarettes Sales v. Mayor, Coun., Long Branch, 121 N.J. Super. 439, 446 (Law Div. 1972) (licensing of cigarette vending machines); Dimor, Inc. v. Passaic, 122 N.J. Super. 296 (Law Div. 1973) (State obscenity laws); Wein v. Irvington, 126 N.J. Super. 410 (App. Div. 1975), certif. den. 65 N.J. 287 (1974) (State obscenity laws). The test applied where no apparent conflict exists is one of determining the Legislature's intent. Dimor, Inc. v. Passaic, supra, 122 N.J. Super. at 302.
Two lower courts have found provisions in municipal rent control ordinances which enumerate grounds for eviction to be invalid because by the District Court Act (N.J.S.A. 2A:18-53 et seq.) and the Landlord and Tenant Act (N.J.S.A. 2A:42-1 et seq.) the subject was preempted by the State. Barry Gardens v. Passaic, 130 N.J. Super. *603 369, 380 (Law Div. 1974); Leone Management Corp. v. Bd. of Comm'rs, West N.Y., 130 N.J. Super. 569, 580 (Law Div. 1974). In another case, however, the trial court noted that because the State eviction laws were purely jurisdictional, they may not have preempted the field. Inganamort v. Fort Lee, supra, 120 N.J. Super. at 298-300. With the enactment of N.J.S.A. 2A:18-61.1 in 1974, which sets forth specific enumerated grounds of eviction, there can no longer be any doubt that the Legislature intended to preempt this area of the law. Consequently, we hold that provisions in municipal ordinances which set forth grounds for eviction or dispossession are invalid as having been preempted by state enactments.[26] A similar result was reached in Birkenfeld v. City of Berkeley, 122 Cal. Rptr. 891, 902 (Cal. App. 1975). The invalidity of the provisions does not affect the enforceability of the remainder of the ordinance since they are clearly severable. Barry Gardens v. Passaic, supra, 130 N.J. Super. at 380-81; Inganamort v. Fort Lee, supra, 120 N.J. Super. at 300.

Conclusion
For the foregoing reasons, we hold that the trial court erred in its reliance upon R. 4:69-6(a) in dismissing plaintiffs' constitutional challenges to the 1973 ordinance. We hold that as originally enacted and as amended the ordinance is facially constitutional. As to plaintiffs' challenge that the ordinance is confiscatory as applied, we hold that plaintiffs must exhaust their administrative remedies by applying for rent reviews pursuant to the hardship provisions of *604 the ordinance. The eviction provisions of the ordinance are invalid.
Modified and remanded for further proceedings in conformity herewith.
For modification and remandment  Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD  7.
Opposed  None.
NOTES
[1] Borough of New Milford, Ordinance No. 73:12.
[2] CPI is defined by the ordinance as "the Consumer Price Index (all items) for the metropolitan New York City area, published periodically by the Bureau of Labor Statistics, United States Department of Labor." Borough of New Milford Ordinance No. 73:12, c. 69-1(d).
[3] In other words, the landlord must divide the tax increase over the previous year by the number of rooms in the dwelling to obtain the tax increase per room, and may charge the tenant only according to the number of rooms he occupies.
[4] This last provision was added in 1974 by Borough Ordinance No. 74:12.
[5] Ordinance No. 74:12, c. 69-3.

Establishment of rents between a landlord and a tenant to whom this act is applicable shall hereafter be determined by the provisions of this Ordinance. At the expiration of a tenancy no landlord may request or receive a percentage increase in rent which is greater than 50% of the difference between the Consumer Price Index 90 days prior to the commencement and 90 days prior to the expiration of such tenancy.
[6] R. 4:69-6 states in pertinent part:

(a) General Limitation. No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing, or relief claimed, ....
* * * * * * * * *
(c) Enlargement. The court may enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires.
[7] Holloway v. Pennsauken Twp., 12 N.J. 371, 374-75 (1953) (allegations that an ordinance authorizing improvements and assessment was unconstitutional and that fundamental rights of notice and hearing had been violated were not barred by statutory time limit and the doctrine of laches); McKenna v. N.J. Highway Authority, 19 N.J. 270, 276, 282 (1955) (allegation that imposition of certain highway tolls was arbitrary, unreasonable and unconstitutional); Oldfield v. Stoeco Homes, Inc., 26 N.J. 246, 262 (1958) (allegation that extending time of performance of certain conditions of a deed was a donation of public lands in violation of a constitutional prohibition); Catalano v. Pemberton Tp. Bd. of Adjustment, 60 N.J. Super. 82, 95-96 (App. Div. 1960) (allegation that township's failure to follow fundamental statutory requirements in enacting zoning ordinance denied plaintiffs' constitutional right of due process); Nelson v. So. Brunswick Planning Bd., 84 N.J. Super. 265, 274-75 (App. Div. 1964) (allegation that planning board's approval of a proposed subdivision infringed upon plaintiffs' right to equal protection was a sufficient constitutional question to avoid dismissal for untimely appeal despite fact that appellants did not show diligence in their efforts to secure relief).
[8] Schack v. Trimble, supra, 28 N.J. at 49-50; Olsen v. Borough of Fair Haven, 64 N.J. Super. 90 (App. Div. 1960).
[9] Thornton v. Village of Ridgewood, 17 N.J. 499, 511-12 (1955); Bernstein v. Krom, 111 N.J. Super. 559, 564 (App. Div. 1970); Guernsey v. Allan, 63 N.J. Super. 270, 277 (App. Div. 1960); Haack v. Ranieri, 83 N.J. Super. 526 (Law Div. 1964).
[10] Paragraph (c) was originally added to R.R. 4:88-15, the source of R. 4:69-6.
[11] Riddlestorffer v. Rahway, 82 N.J. Super. 36, 42-43 (Law Div. 1963) (allegation that a contract between city and company to provide hospitalization services for employees constituted a donation of public money in violation of a constitutional prohibition); Leimpeter's Disposal Service, Inc. v. Mayor & Council of Borough of Carteret, 121 N.J. Super. 18, 22-23 (Law Div. 1972), rev'd on other grounds 125 N.J. Super. 535 (App. Div. 1973) (allegation that ordinance limiting use of municipal disposal area was unconstitutional on equal protection grounds).
[12] "The rule requiring the prior exhaustion of administrative remedies rests on the premise that such remedy is `certainly available, clearly effective and completely adequate to right the wrong complained of.'" Patrolman's Benev. Assoc. v. Montclair, supra, 128 N.J. Super. at 63, quoting Baldwin Const. Co. v. Essex Cty. Bd. of Taxation, 24 N.J. Super. 252, 274 (Law Div. 1952), aff'd 27 N.J. Super. 240 (App. Div. 1953). See also Matawan Borough v. Monmouth Cty. Tax Bd., 51 N.J. 291, 297 (1968).
[13] City of Newark v. Essex Cty. Bd. of Taxation, 110 N.J. Super. 93, 105-106 (Law Div. 1970); Patrolman's Benev. Assoc. v. Montclair, supra, 128 N.J. Super. at 64; State v. Betts, 24 N.J.L. 555 (Sup. Ct. 1854).
[14] Supermarkets Oil Co., Inc. v. Zollinger, 126 N.J. Super. 505, 507 (App. Div. 1974); Wilbert v. DeCamp, 72 N.J. Super. 60, 68 (App. Div. 1962); Nolan v. Fitzpatrick, 9 N.J. 477, 486-87 (1952); Deaney v. Linen Thread Co., 19 N.J. 578, 581 (1955); Conaway v. Atlantic City, 107 N.J.L. 404 (Sup. Ct. 1931).
[15] Roadway Express, Inc. v. Kingsley, supra, 37 N.J. at 142.
[16] Ordinance No. 74:12, c. 69-13 provides:

In the event a landlord cannot meet his mortgage payments and maintenance, or he cannot realize a reasonable profit from his investment in his property, he may appeal to the Rent Leveling Board for increased rental. The Board may grant the landlord a hardship rent increase to meet these payments. The Rent Leveling Board shall require statements of income and expenses and current cash flow statements in connection with all such applications and prior to the granting of any increases the Rent Leveling Board shall give at least ten (10) days notice of public hearing thereon.
Unlike similar provisions in the ordinances involved in Hutton Park and Troy Hills Village, this provision places no ceiling on rent increases available in hardship cases and therefore is capable of affording the landlord complete relief. Plaintiffs argue that this holding would permit a municipality to dispense with all automatic increases and require hearings prior to any rental increase. They are correct; so long as the procedure is not so arbitrary and unavailable as to preclude relief, there is no constitutional obstacle to this approach.
The provision for allowing a landlord an increased rental to realize a "reasonable profit from his investment" is construable as the equivalent of a requirement that the landlord must be permitted a fair return on investment, as held in, and subject to, the qualifications stated in our opinions in Hutton Park and Troy Hills Village.
[17] In fact, Parsippany-Troy Hills' rent increase formula which results in a de facto limitation of 37.5% of the percentage increase in the CPI, is even more restrictive than that provided by New Milford's ordinance. See Troy Hills Village, supra, 68 N.J. at 613 n. 2.
[18] Ordinance No. 74:12, c. 69-3. See n. 16 supra.
[19] The Preamble to New Milford's rent control ordinance, as initially enacted in 1973, provides as follows:

69-1. WHEREAS, the Mayor and Council of the Borough of New Milford deems it in the public interest to regulate, control and stabilize rents and create a Rent Leveling Board within the Borough of New Milford; and
WHEREAS, it is deemed necessary by the Mayor and Council of the Borough of New Milford in view of the demand for apartment dwelling units within the Borough of New Milford, Bergen County, New Jersey, that some type of rent leveling and control be enacted by the Mayor and Council of the Borough of New Milford, and
WHEREAS, under the police powers granted to the Mayor and Council of the Borough of New Milford, in order to promulgate the health, safety and welfare of the citizens of the Borough of New Milford, a Rent Leveling and Control Board is determined to be necessary within the Borough of New Milford.
[20] We do not mean to suggest that holding public hearings or undertaking comprehensive studies are either useless or undesirable; on the contrary, they are to be encouraged. We merely hold that they are not constitutionally required.
[21] Ordinance No. 73:12, c. 69-14 provides

During the term of this Ordinance the landlord shall maintain the same standards of service, maintenance, furniture, furnishings, or equipment in the housing space and dwelling as he provided or was required to do by law or lease at the date the lease was entered into.
An individual tenant or a class of tenants who are not receiving substantially the same standards of service, maintenance, furniture or furnishings or equipment may have the Rent Leveling Board determine the reasonable rental value of the housing unit of dwelling in view of this deficiency. The tenant or class of tenants shall pay the reasonable rental value as full payment for rent until the landlord proves that the deficiency has been corrected.
[22] Ordinance No. 74:12, c. 69-5:

Any landlord seeking an increase in rent shall notify the tenant of the calculations involved in computing the increase, including the Consumer Price Index 90 days prior to the commencement of the tenancy and the Consumer Price Index 90 days before the expiration of the tenancy, the allowable percentage increase which shall not exceed 50% in increase of the Consumer Price Index aforesaid, the allowable rental increase and the allowable tax surcharge. All notices must be served on the Rent Leveling Board at least 45 days prior to the effective date of any increase. The Rent Leveling Board shall advise the landlord of the approval or disapproval of such increase within 15 days after receipt of such notice of increase. The landlord shall then notify the tenant of the correct rental. No increase shall become effective without the prior approval of the Rent Leveling Board.
[23] The fact that the New Milford ordinance contains a severability or saving clause, Ordinance No. 73:12, c. 69-20, evinces an intent on the part of the borough to make these provisions severable. Moreover, the fact that the invalidity of these procedural deadlines does not entail impairment of the dominant purpose of the ordinance further supports a finding of severability. State v. Lanza, 27 N.J. 516, 527-28 (1958), appeal dismissed 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350 (1959), rehearing denied 359 U.S. 932, 79 S.Ct. 606, 3 L.Ed.2d 634 (1959); Oxford Consumer Dis. Co. of No. Phila. v. Stefanelli, 102 N.J. Super. 549, 562 (App. Div. 1968), supplemented on other grounds 104 N.J. Super. 512 (App. Div. 1969), modified on other grounds 55 N.J. 489 (1970), appeal dismissed 400 U.S. 808, 91 S.Ct. 45, 27 L.Ed.2d 38 (1970).
[24] We note that the Wayne Township ordinance resolves this problem by calculating the percentage increase in the CPI for the period 120 days before commencement of the prior lease to 120 days before its termination. Hutton Park, supra, 68 N.J. at 554 n. 3.
[25] Note that the preemption issue raised in the case at bar differs from that addressed by this Court in Inganamort v. Fort Lee, supra, wherein we observed first that "there presently is no statute dealing with rent control and hence the municipal power is not preempted by any such measure" and then that the State statute relating to eviction did not preempt the field of rent control. 62 N.J. at 537.
[26] Having invalidated the ordinance's provisions relating to grounds for eviction in their entirety, it becomes unnecessary for us to dispose of plaintiffs' claim that these provisions prevent them from converting a rental unit into a cooperative or condominium. To pursue this complaint further plaintiffs must challenge the validity of the pertinent State statutes directly.