703 A.2d 971

MAIN UNION ASSOCIATES, A PARTNERSHIP, AND BROWN-STONE ASSOCIATES, A PARTNERSHIP, PLAINTIFFS–APPELLANTS, v. TOWNSHIP OF LITTLE FALLS RENT LEVELING BOARD, MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF LITTLE FALLS, AND TOWNSHIP OF LITTLE FALLS, A MUNICIPAL CORPORATION, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 17, 1997—Decided December 23, 1997.

406

Before Judges HAVEY, NEWMAN and COLLESTER.

*Walter R. Cohn* argued the cause for appellants (*Cohn & Cohn*, attorneys; *Mr. Cohn*, on the brief).

*James V. Segreto* argued the cause for respondents (*Segreto & Segreto*, attorneys; *Mr. Segreto*, of counsel; *John J. Segreto*, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Plaintiffs, Main Union Associates and Brownstone Associates, unsuccessfully challenged the facial constitutionality of the Rent Leveling Ordinance of defendant Township of Little Falls (hereafter Township or Little Falls) because of the ordinance's failure to provide a separate mechanism by which to recover capital improvement surcharges. Plaintiffs appeal. We affirm.

Plaintiffs own two garden apartments located across the street from each other in the Township of Little Falls: Brownstone Apartments, consisting of 80 rental units, and Main Union Apartments, consisting of 52 rental units. The properties have been subject to rent control since 1972 when Little Falls first enacted its rent control ordinance.

The current ordinance permits three types of rent increases: (1) an automatic increase based on a percentage of the Consumer Price Index (CPI), (2) an automatic tax surcharge applicable to certain property tax increases, and (3) a hardship increase "where a landlord is not making a just and reasonable return on his investment." The hardship provision includes increases for capital improvement costs, but only if such costs prevent the landlord from making a just return on his overall investment. Unlike the other increases, hardship increases are not automatic; rather, a landlord must apply to the Rent Leveling Board (Board) and attend a hearing to obtain approval for such an increase.

On August 21, 1996, plaintiffs submitted an application for a capital improvement surcharge to the Board. In the application, plaintiffs sought approval to surcharge each tenant's rent based on capital improvements consisting of replacement windows, installation of a new boiler and improvements to the parking facility of the complex. The total cost of the capital improvements was $136,348.64 for Main Union apartments and $91,985.16 for Brownstone, or $228,333.80 when combined. Plaintiffs sought to surcharge the Main Union tenants' rent in the amount of $22 per month per unit for a period of ten years, at which time plaintiffs would have fully recovered their capital improvement costs. Brownstone's surcharge was projected over ten years to be $22.89 per month per unit.

At the time of plaintiffs' application, all improvements had been completed except window replacement and installation. Accordingly, the application contained receipts for the replacement of a water boiler and creation of a parking lot, as well as estimates of the cost to replace the windows. Because the Township's ordinance regarding rent control did not contain a separate provision for capital improvement surcharges, plaintiffs submitted a proposed amendment to the ordinance along with their application. This application was scheduled to be heard on September 4, 1996.

Prior to the hearing, the Chairman of the Rent Leveling Board asked the township attorney to review the application. On September 3, 1996, the township attorney forwarded a letter to the Chairman, advising that plaintiffs' application was incomplete and recommending that no hearing take place. The letter enumerated the application's deficiencies, including its failure to provide the information required by the ordinance's provision allowing for hardship increases.

The Board held a hearing on September 4, 1996, despite the township attorney's recommendation that it be canceled, during which it rejected plaintiffs' application. This decision was memorialized in a letter dated September 9, 1996, which stated in full:

This is to officially inform you that your application for capital improvement of August 21, 1996 has been rejected at our Rent Leveling Board Meeting of September 4, 1996 due to the fact that it does not meet the requirements of our Rent Control Ordinance, Ch. XXIV of the Township of Little Falls.

This matter has been referred to our Little Falls Township Committee.

On October 7, 1996, plaintiffs' counsel appeared before defendants, the Mayor and the Committee for the Township of Little Falls (Committee), during a committee meeting and requested that the Township amend its rent control ordinance to include a provision separately allowing for a capital improvement surcharge. The Mayor and Committee denied plaintiffs' request. Thereafter, plaintiffs filed a Complaint in Lieu of Prerogative Writs against the Board, the Mayor, the Committee and the Township of Little Falls, charging that defendants improperly denied their application for a capital improvement surcharge. In addition, plaintiffs alleged that the rent control ordinance was unconstitutional and in derogation of the Due Process Clauses of the United States and New Jersey Constitutions in that it violated plaintiffs' substantive due process rights by precluding any possibility of a just and reasonable return on a landlord's investment.

In early November 1996, defendants moved to dismiss plaintiffs' complaint. At a hearing on November 15, 1996, the Township represented that plaintiffs' application was not considered because it was incomplete under the hardship provision. The township attorney promised that once plaintiffs submitted their application in accordance with the requirements of that provision, it would be promptly considered. After this hearing, Judge Scancarella entered an order adjourning defendants' motion to dismiss until a later date. Most significantly, Judge Scancarella ordered plaintiffs to file a motion for summary judgment addressing the issue of the rent control ordinance's constitutionality.

Pursuant to Judge Scancarella's order, plaintiffs filed a motion for summary judgment challenging the ordinance's constitutionality on the basis of its failure to contain a separate provision for capital improvement surcharges. Defendants cross-moved for summary judgment. Following oral argument, Judge Scancarella

rendered an oral opinion denying plaintiffs' motion and granting summary judgment to defendants. Acknowledging that "[r]ent control ordinances must permit a landlord of course to realize a just and reasonable return," he concluded that plaintiffs could seek a capital improvement surcharge through the ordinance's hardship increase provision. Judge Scancarella memorialized his decision in an order declaring the ordinance constitutional and dismissing the complaint.

On appeal, plaintiffs challenge the ordinance on the following grounds: rent control is no longer necessary in New Jersey; the ordinance's failure to include a capital improvement surcharge violates the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Paragraphs One and Twenty of the New Jersey Constitution; the ordinance's failure to provide a separate mechanism by which to recover capital improvement costs is unreasonable; and the ordinance's limitation of only one rental increase per unit per year nullifies the fair return standard outlined in *Hutton Park Gardens v. West Orange Town Council,* 68 *N.J.* 543, 350 *A.*2d 1 (1975). In addition, plaintiffs argue that the Township's conduct has resulted in the inverse condemnation of their properties; the ordinance discourages property owners from making capital improvements in contravention of state public policy; and plaintiffs have a right to maintain this action in lieu of prerogative writs without a remand to the Board. We address the various arguments made by plaintiffs.

Plaintiffs assert that the forces necessitating rent control in the 1970s, such as housing shortages and excessive inflation, are now nonexistent. Therefore, they contend, rent control no longer achieves its objectives of protecting tenants. In fact, plaintiffs argue, rent control harms new tenants by forcing them to subsidize the lower rents of existing tenants, whom the ordinance protects.

■ The Supreme Court of New Jersey has declared rent leveling ordinances constitutional and permissible under the government's general police power. *See Inganamort v. Fort Lee,* 62

*N.J.* 521, 533–34, 303 *A.2d* 298 (1973) (holding that the power to control rents in a period of critical housing need may constitutionally be given to municipalities). The enactment of a rent control ordinance is a purely legislative decision which courts do not have the authority to compel or deny. *Id.* at 530, 303 *A.2d* 298; *see also Hutton, supra,* 68 *N.J.* at 562, 350 *A.2d* 1 (endorsing the position that "[w]ith the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal."). Rather, we may only ensure that the ordinance as adopted contains certain criteria required under the Constitution as set forth by the Supreme Court.

In any event, we find plaintiffs' argument unpersuasive. Aside from the fact that no record had been made concerning the absence of a need for rent control in New Jersey, municipalities in general, and in Little Falls, in particular, cases discussing the constitutionality of rent control never mention inflation as its driving force and specifically hold that rent control is valid even where no critical housing shortage exists. *See, e.g., Brunetti v. Borough of New Milford,* 68 *N.J.* 576, 594, 350 *A.2d* 19 (1975) (stating that rationales for rent control include exorbitant rents, monopoly of the housing market, or prevalence of substandard housing). Plaintiffs' argument that rent control is no longer necessary because of a decline in inflation rates or an increase in housing is, therefore, rejected.

Little Falls' rent control ordinance allows for rent increases for CPI adjustments, tax surcharges, and hardships. The hardship rent increase is governed by Chapter 24–5 of the ordinance, which states:

24–5.1 **Application to the Board.** Where a landlord is not making a just and reasonable return on his investment, he may apply to the Rent Leveling Board for a hardship rent increase. The Board shall hold a hearing in the matter upon notice to the landlord and all of the affected tenants. The Rent Leveling Board shall receive evidence and the landlord shall have the burden of establishing that he is not making a just and reasonable return and shall submit all records required by the Rent Leveling Board. The Rent Leveling Board, after considering all the evidence, shall make findings of fact and conclusions.... The application by the

landlord shall be accompanied by written evidence in support of the application and a copy of the application shall be served upon each tenant affected at the same time the application is filed with the Rent Leveling Board.

The landlord shall, upon written request by the tenants, make all books and records for a period of five (5) years available for inspection.

The ordinance requires the Board to determine the landlord's actual rate of return and the legally minimum rate of return based on the hypothetical value of the rent-controlled property, employing a "fair return on value" standard. While the ordinance does not contain a precise formula for the Board to follow, the Board is obliged to consider certain factors set forth in the ordinance. The key provision is subpart d, which empowers the Board to consider the landlord's expenses for "depreciation for capital improvements." Nowhere, however, does the ordinance allow a separate surcharge solely for capital improvements. Plaintiffs argue that this failure renders the ordinance unconstitutional. In so arguing, plaintiffs are not attacking the constitutionality of the ordinance as applied, but are constitutionally challenging the facial validity of the ordinance.

Plaintiffs maintain that the ordinance violates substantive due process rights on two grounds. First, plaintiffs contend that the ordinance's failure to contain a separate provision by which a landlord may obtain a capital improvement surcharge is arbitrary and unreasonable. Second, they contend that the effect of such an omission is confiscatory. We address the points separately.

█ Plaintiffs assert that the ordinance singles out capital improvements for non-recovery and argue that Little Falls must provide an explicit method for recovering capital improvement costs because they are "predictable and foreseeable costs of doing business." Citing other rent control ordinances which specifically provide for capital improvement surcharges, plaintiffs contend that an ordinance which categorically excludes predictable costs is arbitrary, capricious and unreasonable.

Contrary to plaintiffs' assertion, the ordinance does not categorically prevent capital improvement costs from being included in rent increases. Rather, it factors such costs, as well as others, in

with total income and expense data in order to ascertain the landlord's return. If this return is not just and reasonable, as determined by the Board, then the landlord is entitled to an increase. Furthermore, the Supreme Court has specifically held that a separate provision allowing a surcharge for capital improvement costs is unnecessary, as long as the ordinance allows a landlord a just and reasonable return on its investment. *Brunetti, supra,* 68 *N.J.* at 595–97, 350 *A.2d* 19 (1975).

*Brunetti* and its companion cases, *Hutton, supra,* 68 *N.J.* at 543, 350 *A.2d* 1, and *Troy Hills Village v. Parsippany–Troy Hills Township Council,* 68 *N.J.* 604, 350 *A.2d* 34 (1975), were among the first to examine the constitutional requirements of rent control ordinances in New Jersey. While these decisions have undergone modification in some aspects by subsequent cases, their basic holdings with respect to the instant issues retain their validity. In *Brunetti,* the Court upheld a rent control ordinance similar to the one here. In addition to capping the CPI increase, the *Brunetti* ordinance allowed only hardship increases and tax surcharges, and permitted a landlord to increase rent only once per year. Plaintiffs there challenged the ordinance as confiscatory, violative of substantive due process and contract rights, arbitrary and unreasonable, and ultra vires under the police power. The Court rejected each of these arguments as to the ordinance's facial constitutionality but remanded for factual development through exhaustion of administrative remedies in order to determine whether the ordinance was constitutional as applied. *Brunetti, supra,* 68 *N.J.* at 589, 350 *A.2d* 19. After reiterating its holding in *Hutton* that an ordinance need only provide a just and reasonable return in order to be constitutional, the Court rejected plaintiffs' argument that the ordinance required a separate provision for capital improvement surcharges, stating:

Constitutional principles do not require that rent control regulations take any one particular form. . . . [The landlord] may well be able to recoup the necessary funds from gross rental income or from additional rent increases obtained pursuant to the ordinance's hardship provision. Moreover, we cannot say that the failure to provide additional surcharges for capital expenditures vitiates the reasonableness of the relationship between the regulations and the Borough's goal of stabilizing

rental levels. Therefore, we do not find the ordinance to be confiscatory per se or facially violative of due process.

[*Id.* at 596–97, 350 *A.2d* 19.]

Plaintiffs argue that *Brunetti* is distinguishable because it was decided during an inflationary crisis, which is not present now. However, *Brunetti* never mentioned inflation as a factor supporting rent control. In fact, the Court there determined that many other valid reasons exist for the enactment of a rent control ordinance. *Id.* at 594, 350 *A.2d* 19.

Plaintiffs next contend that capital improvement costs were simply an aside to the Court's decision in *Brunetti*, and the Supreme Court decided the case "in the abstract" because it did not have concrete figures of projected capital improvement costs before it which are present here. Not so. The right to a separate surcharge for capital improvement costs was directly at issue in *Brunetti*, and the Court rejected the argument that the ordinance at issue there "obliges a landlord to maintain minimum standards without allowing him to pass on to his tenants the cost of capital improvements." *Id.* at 595, 350 *A.2d* 19. The Supreme Court thoroughly deliberated its holding that a separate provision for capital improvement surcharges is unnecessary.

Plaintiffs further allege that *Brunetti* is strictly limited to housing markets with *recently enacted* rent control ordinances, admitting that "[i]n these conditions, the failure of an ordinance to contain a capital improvement surcharge is not per se unconstitutional." They argue that *Brunetti* does not, however, apply to "a virtually permanent rent regulation effective for more than two decades." We disagree. The ordinance's constitutionality has nothing to do with the amount of time that the ordinance has been in effect, whether for two weeks or two decades. Plaintiffs never justify their reasoning that a twenty-year-old ordinance would be invalid, even though that same ordinance would be valid if enacted today. Either the ordinance is constitutional or it is not.

In our judgment, *Brunetti* is not distinguishable from the instant case. Neither ordinance provided a separate provision

allowing for capital improvement surcharges. Yet the Court concluded that the ordinance in *Brunetti* was facially constitutional. *Id.* at 603, 350 *A*.2d 19. The Court remanded simply to determine whether the ordinance allowed a just and reasonable return to the landlord under the hardship provision. *Id.* at 603–04, 350 *A*.2d 19.

Plaintiffs contend that cases subsequent to *Brunetti* have eviscerated its holding, if not completely overruled it. To support their argument, plaintiffs refer to *Helmsley v. Borough of Fort Lee*, 78 *N.J.* 200, 394 *A*.2d 65 (1978) (holding that a 2.5 percent ceiling on rent increases had a widespread confiscatory effect as applied); *Property Owners Ass'n of N. Bergen v. Township of N. Bergen*, 74 *N.J.* 327, 378 *A*.2d 25 (1977) (declaring that compelled subsidization of senior tenants' rent is confiscatory); *Cromwell Assoc. v. Newark Mayor & Council*, 211 *N.J.Super.* 462, 511 *A*.2d 1273 (Law Div.1985) (holding that 25 percent cap in rent increases was facially unconstitutional).

The cases referenced by plaintiffs are inapposite. Each questioned whether limits or complete restraints on hardship increases prevented a landlord from receiving a just and reasonable return. For example, in *Cromwell*, a rent control ordinance limited the aggregate amount of increases, whether for hardship, taxes, CPI, or capital improvements, to twenty-five percent of the rental payment. Thus, even if it was determined that an increase of thirty-three percent was necessary to provide a landlord with a just and reasonable return, only a twenty-five percent increase would be granted, and therefore, the landlord's return was below that which was constitutionally permissible.

This limitation issue is completely distinct from the holding in *Brunetti* as it applied to capital improvement surcharges. *Brunetti* retains its vitality; capital improvement surcharges need not be separately provided for in a rent control ordinance. All that is constitutionally required is that the ordinance provide a just and reasonable return to a landlord. Little Falls' ordinance

allows for such a return on its face, via its hardship provision, and is therefore constitutional.

Plaintiffs argue that they are not seeking a permanent rent increase under the hardship provision. Because the ordinance does not reflect the temporary nature of a capital improvement surcharge, plaintiffs maintain that it is arbitrary and unreasonable. According to plaintiffs, to ask for a permanent increase under the hardship provision "conflicts with the design of the Ordinance as evidenced by treatment of tax increases as surcharges."

First, nothing in the ordinance compels a landlord to maintain a higher rate than it feels is necessary. Plaintiffs are always at liberty to reduce their rent once the capital improvement is, in effect, paid off. Second, and more importantly, the Supreme Court has held that no right exists for a complete pass-through of all operating costs. *Helmsley, supra,* 78 *N.J.* at 223, 394 *A.*2d 65; *Hutton, supra,* 68 *N.J.* at 574–75, 350 *A.*2d 1. This includes capital improvement costs. All that is necessary is that the landlord receive a just and reasonable return on its investment. *Helmsley, supra,* 78 *N.J.* at 223, 394 *A.*2d 65; *Hutton, supra,* 68 *N.J.* at 568, 350 *A.*2d 1. Because Little Falls' ordinance provides for that return in its hardship provision, the ordinance's constitutionality is not compromised.

Plaintiffs also contend that the ordinance is unconstitutional because it contains a return on value standard based on a hypothetical market which was rejected in *Helmsley* and *Mayes v. Jackson Township Rent Leveling Bd.,* 103 *N.J.* 362, 374, 511 *A.*2d 589 (1986), *cert. denied,* 479 *U.S.* 1090, 107 *S.Ct.* 1300, 94 *L.Ed.*2d 155 (1987). They argue that no landlord can meet its burden of proving a hardship under the ordinance because no landlord can reliably demonstrate a building's hypothetical value in a free market. According to plaintiffs, where rent control exists, it affects a building's value, thus making a hypothetical value impossible to determine.

In *Troy Hills, supra,* 68 *N.J.* at 623, 350 *A.*2d 34, not only did the Court uphold a rent control ordinance which allowed limited increases in cases of hardship, capital improvements, tax and CPI adjustments, but it provided guidelines by which to determine whether the landlord is receiving a just and reasonable return on its investment. There, the Court "employ[ed] the term 'value' ... to refer to the value of the property in a rental housing market free of the aberrant forces which led to the imposition of controls." *Id.* at 623, 350 *A.*2d 34. Little Falls has incorporated these guidelines, word-for-word, in its own ordinance.

In *Helmsley,* the Supreme Court undertook an extensive evaluation of the different methods of computing a landlord's return. With respect to valuing a landlord's property based on a hypothetical market without rent control, the Court conceded that "estimation of value presents difficult problems of proof." *Helmsley, supra,* 78 *N.J.* at 213, 394 *A.*2d 65.

We need not discuss different approaches to valuation. In determining a landlord's return, the *Helmsley* Court reviewed in detail all of the factual data before it, including the landlord's net operating ratios. This court, however, has no such data before it. While the Supreme Court has determined that an ordinance such as Little Falls' can be unworkable, it has not gone so far as to declare it facially unconstitutional. In fact, the Court emphasized in *Helmsley:*

> We have refrained deliberately from formulating a numerical test for confiscation. The concept of a minimum constitutional return is a theoretical tool, not a measurable quantity which can be fixed with precision. Judicial review of rent control measures is limited to determining whether the return permitted by an ordinance falls above or below this theoretical dividing point.
>
> [*Id.* at 242, 394 *A.*2d 65.]

It is true that the court in *Helmsley* stated that an ordinance can be so vague that it might not provide a landlord reasonable certainty as to whether a just and reasonable return is being received. *See id.* at 231, 394 *A.*2d 65. The plaintiffs in the instant case, however, have never argued that they are not receiving a just and reasonable return. Rather, they challenge the ordinance

on its face because of its failure to include a capital improvement surcharge provision. We are unable to determine whether plaintiffs are receiving a just and reasonable return because we have not been presented with enough facts. For that decision to be made, plaintiffs would need to return to the Board and present the data required by the ordinance for an application for a hardship increase. Only then could we determine whether the ordinance's standard for "just and reasonable return" is constitutional. Because the plaintiffs have only challenged the validity of the ordinance on its face, we uphold the constitutionality of the ordinance, including its method of valuation.

Plaintiffs next argue that the ordinance is confiscatory for two reasons: (1) it delays a landlord's right to a just and reasonable return and (2) it limits rent increases to one per year, thereby denying a landlord its right to a just and reasonable return. We address the arguments in the order raised.

Plaintiffs argue that the Little Falls ordinance causes an administrative delay by requiring that an applicant seek a capital improvement surcharge through a hardship provision. Specifically, they cite *Helmsley*, in which the Court concluded, among other things, that the administrative delay in seeking a rental increase under the hardship provision rendered the subject ordinance confiscatory. Under the ordinance in *Helmsley*, a landlord could seek an increase only after realizing an inadequate return. *Id.* at 224, 394 *A.2d* 65. Even then, the landlord might not be heard for two to four months after applying for a rent increase, all the while losing money. Moreover, the ordinance's hardship provision provided only for a temporary rental increase for one year; the Board did not have the authority to raise the base rent. Thus, a landlord would be required to file a new application each year.

Unlike the applicant in *Helmsley*, one applying for a hardship increase in Little Falls will be immediately heard. In the instant case, plaintiffs applied for an increase on August 21, 1996, and a hearing was held within two weeks. Thus, there is no confiscatory administrative delay. *See Kim Real Estate Enterprises v. Town-*

*ship of N. Bergen,* 215 *N.J.Super.* 255, 260, 521 *A.*2d 900 (App.Div. 1987) (determining that an ordinance requiring a hearing within 45 days of the completed application date is not confiscatory). Additionally, Little Falls has argued that an applicant may submit proposed expenditures with applications. Nothing contradicts this contention. Thus, the ordinance does not delay a landlord from receiving its proper return and nothing of record discloses otherwise.

■ Plaintiffs also argue that the ordinance is confiscatory in that it limits a landlord to one rental increase per year. According to plaintiffs, if a landlord opts for a CPI increase, or imposes a tax surcharge, it forfeits its right to any other increase.

Defendants respond that the ordinance allows for all three increases in any year, even the same year. According to defendants, a CPI increase adjusts the base rent and is therefore not considered an "increase in rent" under the ordinance. Additionally, the ordinance specifically provides that a "tax surcharge shall not be considered rent for purposes of computing cost of living rental increases." Consequently, we accept defendants' representation that the ordinance, as construed by the Board, allows a landlord to ask for each increase at the same time.

Moreover, the Court in *Brunetti,* when faced with a limit of one increase per year, never mentioned that such a limitation was confiscatory and therefore unconstitutional. Most significantly, in *Modular Concepts, Inc. v. South Brunswick Township,* 146 *N.J.Super.* 138, 145, 369 *A.*2d 32 (App.Div.1977), *certif. denied,* 74 *N.J.* 262, 377 *A.*2d 667 (1977), we upheld an ordinance that limited landlords to one annual request for a rental increase per apartment. Concluding that the ordinance was not arbitrary or capricious, we stated:

[t]he limitation on the number of requests for rental increases a landlord is permitted to make is based upon considerations of administrative convenience. The members of the board are appointed, serve in a voluntary capacity and have limited time to devote to consideration of requests for increased rent.

[*Id.* at 145, 369 *A.*2d 32.]

We are satisfied that Little Falls' ordinance, which limits the number of times that a landlord can increase a tenant's rent in one year, is not confiscatory.

Plaintiffs argue that, by failing to allow full recovery of capital improvement costs, Little Falls' ordinance inversely condemns the value of their capital improvements in violation of their constitutional rights. Plaintiffs contend that capital is distinct property; once it is converted to a capital improvement, however, it becomes part of the overall building. If a municipality, through its rent control ordinance, does not permit a landlord to recover the converted capital in its entirety, plaintiffs argue, the municipality is taking the landlord's property without compensation. We disagree.

The United States Supreme Court has held that a regulation does not constitute an inverse condemnation of one's property if it "substantially advances legitimate state interests" and does not "deny an owner economically viable use of his land." *Nollan v. California Coastal Comm'n*, 483 *U.S.* 825, 834, 107 *S.Ct.* 3141, 3147, 97 *L.Ed.*2d 677 (1987). It must, however, be "reasonably necessary to the effectuation of a substantial government purpose." *Id.*

Plaintiffs argue that Little Falls' ordinance fails to meet the *Nollan* test, relying on *Santa Monica Beach, Ltd. v. Santa Monica Rent Control Bd.*, 50 *Cal.Rptr.*2d 726 (Cal.App.), *review granted*, 917 *P.*2d 623, 53 *Cal.Rptr.*2d 784 (1996). There, Santa Monica enacted a rent control ordinance because of the "hardship caused by [a] serious housing shortage." Proof existed which established that during the time the ordinance was in effect, the city's rental housing *declined further* by five to twelve percent, although California's non-rent-controlled cities experienced an increase in the rental housing supply. The court never determined whether the ordinance was unconstitutional, but instead remanded for further proofs. It did, however, indicate that failure to mitigate the effects of the housing shortage or assist the poor in obtaining adequate housing could render the ordinance unconstitu-

tional because no reasonably necessary and legitimate state interest existed on which to uphold it.

Unlike the plaintiffs in *Santa Monica*, plaintiffs here offer only opinions and no concrete proof that Little Falls' rent control ordinance has reduced the housing supply in Little Falls. Regardless, our Supreme Court has determined that a housing shortage is not the only reason that a rent control ordinance may be enacted. *See, e.g., Brunetti, supra*, 68 *N.J.* at 594, 350 *A.*2d 19 (stating that rationales for rent control include exorbitant rents, monopoly of the housing market, or prevalence of substandard housing).

Moreover, *Brunetti* has acknowledged that no right exists entitling a landlord to separately recover capital improvement costs. Complying with the *Brunetti* decision, Little Falls' rent control ordinance ensures that landlords receive a just and reasonable return. Plaintiffs, however, are not seeking merely a just and reasonable return, they want a 100 percent return. They fail to acknowledge that capital improvements increase the value of one's property. Thus, a landlord's return on the value of that property must also necessarily increase.

Furthermore, capital improvements provide a landlord with additional tax benefits through deductions for depreciation and make a building more desirable, not only to prospective buyers, but also to prospective tenants. Thus, capital improvement costs may be recouped through a hardship increase as well as decreased taxes, decreased vacancy rates and even decreased repair costs. The diminution in value that undergirds an inverse condemnation claim is not present. *See also Silverman v. Rent Leveling Board of Cliffside Park*, 277 *N.J.Super.* 524, 537, 649 *A.*2d 1342 (App. Div.) (concluding that "in order to recover damages on an inverse condemnation claim, the municipality's decision and the administrative lag in according a remedy must have substantially destroyed the landlord's beneficial use of his property"), *certif. denied*, 139 *N.J.* 443, 655 *A.*2d 445 (1995).

■ Finally, plaintiffs argue that the ordinance violates public policy in that it discourages landlords from making capital improvements and benefiting their tenants. To support their argument, plaintiffs rely on *Georgian Gardens Tenants Ass'n v. Georgian Gardens,* 249 *N.J.Super.* 475, 480, 592 *A.*2d 641 (App.Div. 1991) and *Green Acres of Verona, Inc. v. Borough of Verona,* 146 *N.J.Super.* 468, 370 *A.*2d 53 (App.Div.1977). At issue in both of these cases was whether certain costs constituted capital improvements. Neither case ever mentioned, let alone discussed, whether public policy dictated that a separate provision for capital improvement surcharges was essential. In *Georgian Gardens,* however, we did observe that "permitting property owners to recapture all of the reasonable costs attendant upon the installation of these needed improvements encourages landlords to maintain the habitability of older buildings and to sustain quality of life for their tenants." *Georgian Gardens, supra,* 249 *N.J.Super.* at 480, 592 *A.*2d 641.

Nonetheless, plaintiffs refuse to recognize that Little Falls' ordinance specifically takes capital improvement costs into account when determining whether a landlord is receiving a just and reasonable return. Admittedly, full recapture of capital improvements may provide the greatest incentive for a landlord to make those improvements. However, recoupment of a capital improvement through the hardship mechanism along with the other benefits mentioned satisfies us that public policy is not undermined.

With respect to plaintiffs argument that they have a right to maintain this action in lieu of prerogative writs without a remand to the Board, we agree. Plaintiffs structured their case as a facial attack on the ordinance's constitutionality. We have addressed all of their arguments and conclude that the Little Falls ordinance under challenge passes constitutional muster on its face.

Accordingly, the order granting summary judgment to defendants and dismissing plaintiffs' complaint is affirmed.